UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Greater Lakes Ambulatory
Surgical Center, LLC,

    Plaintiff,

v.                                                 Case No. 18-13260

Enterprise Leasing Company of Detroit,     Sean F. Cox
                                                        United States District Judge

    Defendant.
_____/

**OPINION & ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Greater Lakes Ambulatory Surgical Center, LLC ("Greater Lakes") filed this action against Defendant Enterprise Leasing Company of Detroit ("Enterprise) seeking to recover payment of alleged medical bills incurred by non-party Joyce Robinson, who was covered under a Michigan No-Fault insurance policy issued by Enterprise. The matter is currently before the Court on a Motion for Summary Judgment filed by Enterprise after the close of discovery in this case. The Court concludes that oral argument is not necessary and orders that the motion shall be decided on the briefs. Local Rule 7.1(f).

As explained below, the Court shall GRANT the motion. Plaintiff has essentially failed to prosecute this case, in that Plaintiff did not file a witness list as ordered by the Court. Thus, Plaintiff has not identified *any witnesses* for trial in this case and discovery is now closed. Plaintiff also failed to file a response to the summary judgment motion filed by Defendant. After this Court issued a Show Cause Order, Plaintiff then filed a brief opposing the motion, without any explanation for having failed to file a timely brief. In addition, as to the untimely response

1

brief it did file, Plaintiff: 1) failed to comply with the Court's practice guidelines and did not respond to the statement of material facts filed by Defendant; 2) failed to respond to some arguments set forth in the motion; and 3) sought to oppose the motion by filing an affidavit from a person not identified in Plaintiff's initial disclosures or any witness list, which is insufficient to survive summary judgment in any event.

## BACKGROUND

Non-party Joyce Robinson ("Robinson") was involved in an automobile accident on September 9, 2017.

Thereafter, Robinson filed a lawsuit against Enterprise seeking Michigan No-Fault benefits in Wayne County Circuit Court ("Robinson's Action").

Greater Lakes claims to have provided medical services to Robinson. On September 19, 2018, Greater Lakes filed suit against Enterprise in Macomb County Circuit Court. On October 18, 2018, Enterprise removed that action to this Court. Greater Lakes' Complaint includes the following counts:

1) "Violation of Statutory Duty, MCL 500.3101 Et Seq. Through Assignment of Rights" (Count I): wherein Greater Lakes alleges that patient Joyce Robinson is entitled to pursue a direct action for payment of medical treatment pursuant to Mich. Comp. Laws § 500.3112 et seq., and assigned her rights to do so to Enterprise, who provided medical treatment to the patient;

2) "Breach of Contract – Third Party Beneficiary" (Count II): wherein Greater Lakes claims to be an intended third-party beneficiary of Joyce Robinson's contract of No-Fault insurance issued by Enterprise;

3) "Declaratory Relief" (Count III): wherein Greater Lakes seeks a declaration that Enterprise is the insurer responsible for the payment of Michigan No-Fault insurance benefits on behalf of Robinson for her motor vehicle accident;

> 4) "Attorney Fees" (Count IV): wherein Greater Lakes seeks an award of attorney fees under Mich. Comp. Laws § 500.3148; and
>
> 5) "Statutory Interest" (Count V): wherein Greater Lakes seeks an award of statutory interest under Mich. Comp. Laws § 500.3142.

(ECF No. 1).

This Court held the scheduling conference in this matter on December 10, 2018, and issued the Scheduling Order on December 13, 2018.

This Court's practice guidelines are included in the Scheduling Order and provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(ECF No. 5, Scheduling Order at 2-3).

During discovery in state court, in Robinson's case, Enterprise noticed the deposition of Greater Lakes' "Individual Most Knowledgeable Regarding The Charges Billed By Greater Lakes Ambulatory On Behalf Of Joyce Robinson" to take place on September 20, 2018. (Ex. 1 to Def.'s Motion). That notice expressly requested that the person be able to testify about the following topics:

(1) How the rates charged by the company for services provided to JOYCE ROBINSON were established;
(2) How the company intends to show that the rates it charged for service provided to JOYCE ROBINSON are reasonable;
(3) Billing practices, including how bills are generated, how billed CPT codes are determined, the submission of bills to plaintiff's health insurer(s), and the submission of bills to and responses received from Defendant.

(*Id*. at 2). The notice further requested that the witness bring the following with them to the deposition on September 20, 2018:

(1) Any and all materials used to set the rates for the services provided to JOYCE ROBINSON including but not limited to any "surveys" or comparative analyses;
(2) Any and all communications, e-mails, notes, or drafts concerning the establishment of rates;
(3) Any and all materials the corporation believes show that the rates it charges for services are reasonable;
(4) Any and all documentation of the specific services provided to JOYCE ROBINSON;
(5) Any reference materials, code books, manuals, computer programs, etc. that are referenced when determining whether the correct CPT code is being billed for any particular service.

(*Id*.)

In response to that notice, Greater Lakes produced Alicia Ambrozy to testify for a deposition on September 20, 2018. The full transcript of her deposition is attached to Enterprise's summary judgment motion as Exhibit 2.

At the beginning of that deposition, Enterprise's counsel stated: "Let the record reflect today's the date and time set for the Duces Tecum Deposition of the Individual Most Knowledgeable regarding the charges billed by Greater Lakes Ambulatory on behalf of Joyce Robinson." (ECF No. 9-4 at PageID.227). Alicia Ambrozy then confirmed that she was the representative sent in response to the deposition notice:

Q. Good afternoon. How are you this afternoon?

4

| | | |
|---|---|---|
| A. | Great. How are you? | |
| Q. | Great. Thanks for taking the time to be with us. Obviously – and I marked – before you got out here, I marked the Dep Notice as Exhibit 1. I see you have copy of the subpoenaed Dep Notice in front of you; correct? | |
| A. | I do. | |
| Q. | And we asked for a representative to be produced to testify regarding some specific topics today. Did you read the Dep Notice, and do [sic] understand the topics that you're here to testify about? | |
| A. | I do. | |
| Q. | And are you able to testify competently about how the rates charges by Greater Lakes Ambulatory for services provided to Joyce Robinson were established? | |
| A. | Yes. | |
| Q. | And are you able to testify how the company intends to show that its rates are reasonable? | |
| A. | To the best way I can, yes. | |
| Q. | And are you able to testify regarding the billing practices for these facilities? | |
| A. | Yes. | |

(*Id*. at PageID.228-229).

The "Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)", that Greater Lakes provided to Enterprise in this case, identified "Alicia Ambrozy of Block Billing solutions" as a person knowledgeable about "Joyce Robinson's medical and billing records." (ECF No. 14-2 at PageID.347). Greater Lakes did not provide the name of anyone else employed by Greater Lakes or Block Billing, as persons knowledgeable about Greater Lakes' bills in this case. Greater Lakes' Initial Disclosures stated that it may rely on "Any and all of Plaintiff's Medical records and billings located with Greater Lakes Ambulatory Surgical Center, LLC and third party Block Billing Solutions." (*Id*. at PageID.348).

The Scheduling Order provides that witness lists were to be filed by March 8, 2019, and that discovery would close on April 10, 2019.

The docket reflects that Greater Lakes *did not file a witness list* and, on May 13, 2019,

5

Enterprise filed a Motion for Summary Judgment. (ECF No. 6). That motion was re-filed, pursuant to this Court's order,[1] on May 30, 2019.

The Statement of Material Facts Not In Dispute filed by Enterprise (ECF No. 9-2) in support of its summary judgment motion consists of the following portions of Alicia Ambrozy's deposition transcript.

Enterprise notes that Ambrozy "did not bring with her any documentation that were [sic] used to set the rates charged by [Greater Lakes], any communications regarding how the rates were established or any materials that show that the rates that were charged were reasonable. In fact, she did not have most of this documentation available to her" as her deposition testimony reflects:

> Q. All right, so what I don't see is any documentation about how – or materials about how the rates were set for Greater Lakes Ambulatory. Do you have any information like that?
> A. I don't have the actual data for that. I don't know how they were set at that time of service. I do know, when I got here in June, we changed processes and did surveys and pulled the Obs and the things you need to get the pricing right, but I don't – as far as this here service, I don't know what they used for pricing to provide that to you.
> Q. You got here, when, in June of 2018?
> A. Yeah, correct.
> Q. I'll keep going through this and then come back and ask you some follow-up questions, because I don't want to get totally derailed. But there's – I mean, all of these really have to do with the same thing. Any and all communications, emails, notes, drafts concerning establishment of rates, you don't have any of that stuff; right?
> A. No.
> . . . .
> Q. So can you testify that $10,000 is a reasonable charge for just a surgical center fee for this Ansi-Stim implantation?
> A. I can testify that it would be reasonable.
> Q. How? Based on what?

---

[1]Defendant did not separately scan its exhibits when it initially filed the motion.

> A. Based on the other charges that I have researched that this Ambulatory Surgery Center is billing for that are reasonable. So I would assume they did that across the board before I was employed there.
> Q. So do you have any documentation – let me – of any of the research –
> A. Not here for this, no.
> Q. You've got to wait for me to finish, that's the other rule.
> A. Okay.
> Q. Because that's what we asked you to bring with you today, is any evidence that would back up your testimony that $10,000 is a reasonable rate for this; right? And you don't have anything like that, do you?
> A. No.

(Ambrozy Dep. at 9 & 35).

Enterprise's motion further states that Ambrozy was not able to testify about how the rates were set or why the rates charged in this case are reasonable and admitted that she has no knowledge or information regarding the wholesale cost to Greater Lakes of any devices or equipment. It cites the following testimony:

> Q. Do you know how anyone determined that $10,000 was a reasonable rate to charge for that procedure?
> A. I do not.
> . . . .
> Q. Does Greater Lakes Ambulatory have a set percentage markup for durable medical equipment?
> A. None.
> Q. Do you know what the markup is?
> A. I don't.
> Q. Do you know or could you find out how much Greater Lakes char – or paid for that Ansi-Stim device that it charged us $3100 for?
> A. I could always ask. I don't have one to provide or don't know where I can get one.
> Q. Well, is there a purchasing department here or a bookkeeping department that would keep records of what was paid for a specific product that was purchased?
> A. I don't know of a department like that here.
> . . . .
> Q. So the $10,000 that you – that Greater Lakes charged for the 64999 code, what exactly was that for? I mean, what did it include?
> A. I don't know.
> . . . .

7

> Q. Do you have any idea what the $10,000 billed for 64999 was based upon in this case?
> A. I don't know.
> . . . .
> Q. Do you know who determines the rate of $14,110 per bilateral injection?
> A. At that time, I don't know who made that rate.
> Q. There's a – the bill was submitted with a tax payer ID. It's signed by an Alison Bryant. Does that look right? Do you know who that is?
> A. It looks right. I don't know what that person is. She's no longer here now.
> . . . .
> Q. You also don't know who established $14,110 as a reasonable rate or how they did it; right?
> A. Not at that time, no.
> Q. Again, you don't have any documentation in front of you as to what Greater Lakes Ambulatory paid for this implant; right?
> A. I don't.
> . . . .
> Q. The 42,500, how did -
> A. Oh, I don't know how they did that device. I don't know the cost of that device.
> Q. Who is they?
> A. Oh, whoever billed this up, I'm saying.
> Q. You don't know whether that's reasonable – or a reasonable markup for that implant; right? Because you don't know what the company paid for it; right?
> A. Correct.

(Ambrozy Dep. at 32-34, 39, 42, 44, 55-56).

Enterprise further states that Ambrozy testified that Greater Lakes never pursues its patients for any amounts charged, regardless of whether or not they are paid by insurance and direct the Court to this testimony:

> Q. And why does it say it was not billed?
> A. On mine it says, not billed, as we don't bill the patient. That is under guarantor. If the patient has auto insurance, they – whether they have their auto insurance when they get here or not, some people don't have a claim, they are never billed.
> Q. Have you ever billed a patient for –
> A. Not once. We don't even contact the patient for information.
> Q. What about when a patient, say, settles their lawsuit and you get paid less

> Q. than a hundred percent of the bill, do you go back after the patient?
> A. Never. We have one that gets dismissed, we're just out.
> Q. So at least in your experience, you've never billed a patient; right?
> A. Never.
> Q. What would you do, hold the patients responsible for the fees?
> A. Nope.
> Q. Have you ever, as far as you know?
> A. As far as I know, no. I couldn't believe it, actually.
> Q. Did he ask anybody about that, whether you hold patients responsible? Did anyone – have you – have you got any advice or been given any instruction?
> A. Fahad said we never bill the patient was the answer I got.
> Q. And that's your manager, right?
> A. Yes.

(Ambrozy Dep. at 57).

After Greater Lakes failed to file any response to Enterprise's summary judgment motion within the time permitted for doing so under the Local Rules, on June 25, 2019, this Court ordered Greater Lakes to show cause why the Court should not grant the unopposed motion. (ECF No. 11).

That show cause order prompted Greater Lakes to file a response to the summary judgment motion on June 27, 2019. It did not provide any explanation as to why it failed to file a timely response to the summary judgment motion. In addition, Greater Lakes failed to follow this Court's practice guidelines and did not a Counter-Statement responding to Enterprise's Statement of Material Facts. As such, it stands unopposed.

The late response brief filed by Greater Lakes attached the following: 1) an insurance claim form and "Patient Day Sheet" relating to Joyce Robinson, that lists a patient balance of $270,020.25; 2) an "Acknowledgment Of Liability Assignment of Benefits" form signed by Joyce Robinson; 3) an unsigned Affidavit of Fahad Alhilali, with blanks in some lines; and 4) a signed and notarized Affidavit from Fahad Alhilali. The signed Affidavit states:

9

Deponent Fahad Alhilali, being duly sworn, states the following under oath:

1. He is a person over the age of 18 who is capable of providing legal testimony to this court.

2. He is the Billing Manager of Block Billing, and authorized to oversee the billing of Greater Lakes Ambulatory Surgical Center.

3. That at one time, Ms. Alicia Ambrozy was employed at Block Billing from June, 2018 to April, 2019.

4. That her position was solely to [sic] billing assistant.

5. That she left in April, 2019 due to finding other employment.

6. That her knowledge of the company billing practices was limited, in that she had no knowledge of how the rates were set or how patients are ultimately held responsible.

7. That this debt collection is still being put into place by the company, but the company has always had the expectation that the patient was ultimately responsible for the bills.

8. Furthermore, I am the individual who sets the rates and reviews prior rates set by the company.

9. That I set rates by doing my own research, comparing with past payments received by other insurance companies, and looking into the FairHealth and other databases to come up with pricing for the company.

10. Further, deponent sayeth not.

(ECF No. 12 at PageID.333-34).

## ANALYSIS

*Covenant* presented the Michigan Supreme Court with "the significant question of whether a healthcare provider possesses a statutory cause of action against a no-fault insurer to recover personal protection insurance benefits for allowable expenses incurred by an insured

under the no-fault act." *Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 500 Mich. 191, 195 (2017). In *Covenant*, the Michigan Supreme Court held "that healthcare providers do not possess a statutory cause of action against no-fault insurers for recovery of personal protection insurance benefits under the no-fault act." *Id*. at 196. The Michigan Supreme Court explicitly stated, however, that its "conclusion today is not intended to alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider." *Id.* at 217 n.39.

Accordingly, after *Covenant,* a healthcare provider such as Greater Lakes does not have a statutory cause of action against a no-fault insurer like Enterprise but "may still have a contract-based cause of action if there has been a valid assignment of rights." *Estate of Grimmett v. Encompass Indemnity Co.*, 2017 WL 5592897 (E.D. Mich. 2017); *see also Michigan Amb. Surg. Ctr., LLC v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 4777409 (E.D. Mich. 2018) (It is "understood following *Covenant,* which expressly declined to alter the rights of an insured to assign rights to a medical provider, that a provider is not precluded from presenting claims based on a valid contractual assignment from the insured for presently or past due benefits."). That is what Greater Lakes is seeking to do in this case. Thus, its "claims are derivative of [Robinson's] claims as the insured is the only person entitled to claim PIP benefits under the Michigan No-Fault statute." *Id.*

Enterprise notes that the statute requires that three factors be met before an item is an allowable expense under Michigan's No-Fault scheme: 1) the charge must be reasonable; 2) the expense must be reasonably necessary; and 3) the expense must be incurred. *Nasser v. Auto Club Ins. Ass'n*., 425 Mich. 33, 49 (1990); Mich. Comp. Laws § 500.3107.

Enterprise contends that it is entitled to summary judgment in this case because: 1) Greater Lakes cannot show that Robinson "incurred" any costs for its alleged services; and 2) even if she had, Greater Lakes failed to produce any evidence of the reasonableness of its charges.

**A.   Greater Lakes Failed To Produce Any Admissible Evidence Of The Reasonableness Of Its Charges In This Action.**

It is undisputed that, under Michigan's No-Fault scheme, "an insurer is not liable for any medical expense to the extent that it is not a reasonable charge for a particular product or service, or if the product or service itself is not reasonably necessary." *Nasser v. Auto Club Ins. Ass'n.*, 425 Mich. 33, 49 (1990); Mich. Comp. Laws § 500.3107. That is, § 3107 "makes both reasonableness and necessity explicit and necessary elements of a claimant's recovery, and thus renders their absence a defense to the insurer's liability." *Nasser, supra*. In addition, the burden of proof on both of those issues lies with the plaintiff. *Id*. "Moreover, it is each particular expense that must be both reasonable and necessary." *Id*. at 50.

Enterprise asserts that it is entitled to summary judgment because Greater Lakes "has utterly failed to present any admissible evidence that its charges are reasonable. Defendant previously noticed the deposition of the person most knowledgeable regarding Plaintiff's charges. Plaintiff produced Alicia Ambrozy to testify." (Def.'s Br. at 10). Ambrozy "was not employed by Plaintiff until after Ms. Robinson's treatment. She had no knowledge of the basis for the rates charged by Plaintiff at that time and could not produce any documentation to support the way in which those rates were calculated." (*Id*. at 10-11). Enterprise states that "[d]iscovery is now closed and Plaintiff has not produced any evidence to support its claim that its charges are reasonable." Thus, Enterprise asserts that Greater Lakes cannot meet its burden

of establishing the reasonableness of its charges for products and services provided to Robinson.

Greater Lakes' untimely response brief attached an affidavit from Fahad Alhilali, a person not listed in its initial disclosures or any witness list filed by it in this action. In it, Fahad Alhilali claims that he is the individual who sets the rates of the company. He states "I set rates by doing my own research, comparing with past payments received by other insurance companies, and looking into the FairHealth and other databases to come up with pricing for the company."

In its Reply Brief, Enterprise states that Greater Lakes cannot use that affidavit to contradict the testimony of Ambrozy. Enterprise notes that it "did not choose this witness, Plaintiff did. In fact, this is the same witness that Plaintiff identified as its witness regarding Plaintiff's billing records on its Initial Disclosures." (Def.'s Reply Br. at 5). Enterprise further asserts that even if the Court were to consider the late–produced affidavit of this individual who was never identified during discovery, it would still not change the result. The Court agrees.

Again, as the plaintiff, Enterprise has the burden of establishing that its claimed charges were reasonable. *Nasser, supra*. "Moreover, it is each particular expense that must be both reasonable and necessary." *Id*. at 50. The affidavit submitted by Greater Lakes does not address any of the specific charges at issue in this case, nor does it contain any specific information as to how Greater Lakes sets it charges. As such, as Enterprise asserts, "even at this late stage, Plaintiff still has not produced the evidence it claims would establish the reasonableness of its rates." (Def.'s Reply Br. at 6). Accordingly, the Court shall grant Enterprise's motion.

**B.      Greater Lakes Has Also Not Shown That Robinson Incurred Any Cost For Its Alleged Services.**

Enterprise's motion also asserts that it is entitled to summary judgment on the additional

ground that Greater Lakes cannot show that Robinson "incurred" any costs for its alleged services, which is another essential element to its claims in this action. Its motion explains:

> An expense is properly incurred when a service has been performed and the insured has an obligation to pay for those services. *Burris v. Allstate Ins. Co.*, 480 Mich. 1081, 745 N.W.2d 1010 (2008). The term "incur" means "to become liable for" and liable means "[r]esponsible or answerable in law; legally obligated." *Bombaski v. Auto Club Insurance Association*, 247 Mich.App. 536, 637 N.W.2d 251 (2001). Exhibit 6.

(Def.'s Br. at 4). "Consequently, no expense is incurred where the insured cannot be legally compelled to pay for the services." (*Id*. at 5). Enterprise asserts that, here, no charges were "incurred" by Robinson for two reasons.

First, Enterprise asserts that there is no evidence that Greater Lakes has pursued Robinson for payment of any of its charges for her medical care. Moreover, Enterprise notes that Ambrozy testified that Greater Lakes never bills its patients for its charges. (*See* Def.'s Br. at 8).

Second, Enterprise asserts that even if Greater Lakes were to attempt to recover its charges from Robinson, they could not do so because it has been more than one year since the accident that caused the injuries in question. Thus, any such claim Greater Lakes would assert against Robinson would be barred by the one-year back rule set forth in Mich. Comp. Laws § 500.3145. (Def.'s Br. at 9).

In its untimely response to Enterprise's summary judgment motion, Great Lakes does not present any evidence to establish that it has attempted to seek payment from Robinson for any of its charges. As Enterprise notes in its Reply Brief, Greater Lakes has also not explained how it could legally do so now and " has not even attempted to contradict Defendant's position that *Auto Owners, supra*, and MCL 500.3145 would bar Plaintiff from pursuing such a claim."

(Def.'s Reply Br. at 4).

Accordingly, although this Court need not reach this argument because Greater Lakes utterly failed to present any admissible evidence to establish that its charges are reasonable, it also appears to have merit.

## CONCLUSION

For the reasons above, IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

                                        s/Sean F. Cox
                                        Sean F. Cox
                                        United States District Judge

Dated: July 30, 2019